Argued February 18, decided March 17, 1908.

## LACHMUND v. MOORE.

[94 Pac. 510.]

SALES—CONTRACTS—RIGHTS OF BUYER—PERFORMANCE.

A contract for the sale of hops required the buyer to make advances on the price, to enable the sellers to pay certain expenses, the advances to be credited on the price. There was no agreement that the sellers should repay the advances, or that they should give notes therefor. The contract was made to enable one of the sellers to obtain money with which to produce the hops sold. It was not contemplated that the other sellers should obligate themselves for the money to be advanced by the buyer. *Held*, that the buyer on refusing to make an advance as required by the contract, unless the sellers would execute to him their note therefor, violated the terms of the contract, and he could not enforce it.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit to foreclose a chattel mortgage on a crop of hops to secure payment of such damages as plaintiffs might sustain from a breach by defendants of a contract to sell and deliver such hops to plaintiffs, which were stipulated and agreed to be the difference between the contract price and the market value at the time of delivery. That portion of the contract necessary to the present controversy is as follows:

"Agreement dated March 19th, 1906, between C. E. Nash, G. J. Moore, Rebecca A. Moore, his wife, of Marion County, State of Oregon, called herein the 'sellers,' and Louis Lachmund & Co., called herein the 'buyer,' concerning the hop crop of the sellers for the year 1906 and the sale of hops * * herein called 'contract hops,' to be grown, harvested, and prepared for market by the seller on that certain hopyard herein called the 'hopyard,' situated on that certain farm in Marion County, State of Oregon, about 2 miles east of Buena Vista, on which land there are about 20 acres planted in hops and owned by Rebecca A. Moore.

First. The seller agrees during the year 1906, in a careful and husbandmanlike manner and in due season, to do all things which may be necessary in order to produce from the hopyard, contract hops, and to bargain and sell, and he does hereby bargain and sell and he does agree to deliver to the buyer, in one lot f. o. b. cars at

Jefferson, in the State of Oregon, between October 1st and November 1st of the year 1906, fifteen thousand (15,000) pounds, net weight of contract hops from the hopyard. * *

Second. The buyer agrees to purchase fifteen thousand (15,000) pounds of contract hops of the crop of hops raised by the seller upon the hopyard in the year 1906, and to accept and receive the same when delivered in pursuance of this agreement, and to pay therefor the sum of ten (10) cents per pound, that is to say, to pay one hundred ($100.00) dollars at the time of signing hereof; two hundred ($200.00) dollars on or about May 15th, 1906, and seven hundred and fifty ($750.00) dollars during the picking season as the same shall be actually required, and the balance at the time of the acceptance and receipt of said hops, but all sums paid by the buyer prior to acceptance and receipt, shall be deemed advances, and interest shall be reckoned upon the same from the time of the advance thereof to the date of the acceptance and receipt, at the rate of 6 per cent per annum, and the amount of such interest credited to the buyer on the purchase price upon final payment; all payments to be made by check or money at the buyer's office at Salem, in the County of Marion, State of Oregon, upon ten (10) days' written request therefor by the seller, or if the seller in his request desire that the same be forwarded by mail or express, to be paid in the manner requested at the risk and expense of the seller. * *

Fourth. It is contemplated between the parties hereto that the seller shall require an amount not exceeding fifteen hundred ($1,500.00) dollars at the times specified, for the purpose of enabling him to pay the expenses of properly cultivating and caring for the hopyard and of picking, drying, curing, and baling the product thereof, and for this reason and for these purposes the buyer agrees to advance said sum at the times and in the manner and upon the request above mentioned, and it is also contemplated by and between the parties hereto that the seller will, prior to the delivery of said hops, contract and sell the same for future delivery, and become by reason thereof obligated to make delivery thereof or suffer damages for his failure to make such delivery. It is therefore further agreed by and between the parties hereto that should the seller make default in

this agreement, and by reason of such default, the buyer not being in default, 15,000 pounds of contract hops be not delivered in pursuance of this agreement, the buyer may recover of the seller, damages for the seller's breach of this agreement, and, in such event, it is hereby agreed that the difference between the contract price and the market value at the time of delivery of fifteen thousand pounds of contract hops, together with all advances, with interest, are hereby fixed as the liquidated damages which the buyer shall recover from the seller for such breach, but should the buyer, the seller not being in default, fail to carry out the terms and conditions of this agreement, the seller shall have the right to recover damages from the buyer. * *

Sixth. For the purpose of securing to the buyer the payment of the liquidated damages which in the event of the seller's default are determined and fixed under this agreement, the seller hereby mortgages to the buyer the entire crop of hops from the hopyard for the year 1906, and agrees that in the event that he fail to pay such liquidated damages when same shall become due on demand therefor, the buyer may institute a suit for the purpose of foreclosing said mortgage; and in the event of such suit in addition to the damages fixed and determined as above specified, the buyer shall be entitled to recover a reasonable attorney's fee for the prosecution of said suit and such fee shall be fixed by the court in which such suit may be brought and determined."

The complaint sets out the contract in full, alleges that plaintiffs have performed, and have been ready and willing to perform, all the covenants and conditions thereof, and that on or about the 1st of September, 1906, they tendered to defendants the sum of $1,050, being the amount due thereunder at that time; that defendants produced during the season of 1906 upon the yard described in the contract 15,000 pounds of hops, which they wrongfully refused to deliver to plaintiffs, as agreed upon; that the market price of the hops at the place and time of delivery was 20 cents a pound; and that, by reason of defendants' default, plaintiffs have been damaged in the sum of $1,500. The prayer is for a

decree foreclosing their alleged lien upon the hops, and for $150 attorney fees.

The answer admits the making of the contract, as set out in the complaint, and the production of the hops by defendants, but denies the other allegations of the complaint. For a further and separate defense, it is alleged that the contract was entered into between plaintiffs and defendants for the benefit of defendant Nash, who was a lessee of his codefendants, to enable him to obtain money with which to cultivate, grow and harvest the hops, and with the understanding and agreement that, upon the execution of the contract, plaintiffs would pay to Nash $100 in cash; that after the signing of the contract plaintiffs' agent tendered to defendants, for their signature, a negotiable, promissory note for the sum of $100, due one day after date, bearing interest at 6 per cent per annum, as a condition to making such payment; that upon objections being made by defendants to signing such note, they were informed by plaintiffs' agent that such were the only terms upon which he could advance the money, and, if they were not satisfied therewith, they would have to call and see plaintiffs about the matter, and thereupon the note was signed and a check for the payment delivered; that on the succeeding day one of the defendants called on plaintiffs at their office in Salem, and protested against the signing of such a note, and plaintiffs then and there informed him that they would not comply with the conditions of the contract on their part, unless such note was given, and, if defendants were not satisfied, to return the check for the first payment; that defendants thereupon returned such check and informed plaintiffs that they elected to treat the contract as rescinded; that, when the second payment became due, Nash called upon plaintiffs to arrange with them, if possible, to obtain money with which to cultivate the hops, but that plaintiffs refused to make such payment unless defendants

would sign a written revocation of their former notice to rescind, and execute and deliver to plaintiffs their negotiable, joint and several promissory note for $200, due one day after date, which defendants refused to do; that plaintiffs have not furnished to defendants any money whatever under the contract in question. The reply put in issue new matter of the answer and a trial resulted in a decree in plaintiffs' favor, from which defendants appeal.                                  REVERSED.

For appellant there was a brief over the names of *Mr. Alva O. Condit and Mr. George G. Bingham*, with an oral argument by *Mr. Condit*.

For respondent there was a brief over the names of *Carson & Cannon*, with an oral argument by *Mr. A. M. Cannon*.

MR. CHIEF JUSTICE BEAN delivered the opinion.

There is a sharp conflict in the testimony as to what occurred at the time the contract was executed in reference to the first payment and the giving of the promissory note for the amount thereof to be made by defendants thereunder; and also as to what occurred when defendant Moore called at the office of plaintiffs the day after the contract was signed, returned the check and obtained possession of the promissory note; but it is unnecessary to enter upon a consideration thereof. It is admitted that the check was returned, and that the first payment was never made by the plaintiffs. Assuming, however, that the giving of the check was, under the circumstances, a compliance with the contract, and that defendants' notice of rescission was ineffectual, it is undisputed that, when the second payment became due, plaintiffs refused to make it, unless defendants would execute and deliver to them a joint and several promissory note for the amount thereof, due one day after date. This was a condition that plaintiffs clearly had no right to exact. Under the contract they were to

purchase from defendants 15,000 pounds of hops to be thereafter delivered, and to make certain advances on the purchase price at stipulated times, to enable defendant "to pay the expenses of properly cultivating and caring for the hopyard, and of picking, drying, curing and baling the product thereof," the amount of such advances, with interest, to be credited on the purchase price upon the final payment. There is no express agreement that defendants shall repay to plaintiffs the advances, or that they shall give negotiable promissory notes therefor. The contract was made, as all parties understood, to enable defendant Nash to obtain money with which to produce the hops contracted to be sold, and it was never contemplated that his codefendants should obligate themselves· for the money to be advanced by plaintiffs, and thus furnish the credit therefor. When, therefore, plaintiffs refused to make the payment due May 12, 1906, unless defendants would execute to them a negotiable, promissory note, they violated the terms and conditions of the contract on their part.

And, as such payment was a condition precedent to their right to enforce the contract (*Faber* v. *Hougham,* 36 Or. 428: 59 Pac. 547, 1111), it necessarily follows that the decree of the court below must be reversed, and the complaint dismissed.                          REVERSED.